IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 2:04cv0391-FTM |
| THE MEDICAL PROTECTIVE COMPANY OF FORT WAYNE, INDIANA, SOUTHWEST FLORIDA HEART GROUP, P.A., EDWARD J. TOGGART, M.D., and THOMAS E. BELL, ) ) ) ) ) ) | Judge Thomas A. Wiseman, Jr. |
| Defendants. ) | |

**MEMORANDUM OPINION**

Plaintiff St. Paul Fire & Marine Insurance Company ("St. Paul") filed this declaratory judgment action seeking a court decree that it does not have a duty to defend Edward J. Toggart, M.D. and Southwest Florida Heart Group, P.A. ("Heart Group") in the negligence action filed by Thomas E. Bell against Dr. Toggart and the Heart Group in Florida state court (the "Underlying Suit"). St. Paul's argument is based upon the claims made in the Underlying Suit and the language of the general liability policy issued by St. Paul to Dr. Toggart and the Heart Group. St. Paul maintains that, while its policy does not provide coverage, defendant The Medical Protective Company of Fort Wayne, Indiana ("Medical Protective") does have an obligation to defend Dr. Toggart and the Heart Group in the Underlying Suit under the professional liability policy issued by Medical Protective to Dr. Toggart and the Heart Group.

St. Paul's policy is a general liability policy that expressly *excludes* coverage of any claims that "result from" the performance of medical professional services. (Doc. No. 1, Ex. A, Pt. 1.) Medical Protective's policy, on the other hand, covers claims for damages "based on professional services rendered or which should have been rendered . . . by the insured." (Doc. No. 1, Ex. B.) When Mr. Bell, an employee of Naples Community Hospital, sued Dr. Toggart and the Heart Group in the Underlying Suit, St. Paul provided a defense to Dr. Toggart and the Heart Group under a reservation of rights, while Medical Protective denied coverage and refused to provide a defense. After St. Paul brought this action to determine its and Medical Protective's respective obligations, the Underlying Suit was stayed pending the resolution of the coverage

issue in this Court.

Now before the Court are three motions for summary judgment: one filed by defendant Thomas E. Bell (Doc. No. 67); the second filed by defendant Medical Protective (Doc. No. 79); and the third filed by plaintiff St. Paul (Doc. No. 81). The parties have all had the opportunity to respond to the various motions and they are ripe for consideration. The sole issue for the Court's consideration is whether either or both insurance companies have a duty to defend Dr. Toggart and the Heart Group in the Underlying Suit.[1] Basically, St. Paul and Medical Protective both claim the other's policy is implicated in the Underlying Suit and that their own policy is not. In his motion, Mr. Bell asserts that there is no gap in coverage and one of the policies must apply; he seeks judgment against one or the other of the insurers on the coverage issue, and it is immaterial to him which one.[2] Dr. Toggart has filed a consolidated response to all three motions for summary judgment in which he posits that *both* insurers have an obligation to defend and therefore that St. Paul's and Medical Protective's motions should both be denied insofar as each seeks judgment in its own favor, and granted insofar as they seek judgment against the other.

For the reasons discussed below, the Court finds that the injuries in question, as alleged in the complaint in the Underlying Suit, resulted from and are based upon the provision of medical professional services by an insured. As such, the claims are clearly excluded by St. Paul's policy and covered by Medical Protective's policy. Judgment will therefore be entered in favor of St. Paul and against Medical Protective.[3]

**I.  STANDARD OF REVIEW**

Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord*

---

[1] The issue of the duty to indemnify is not ripe, since there has not yet been (and may never be) a finding of liability on the part of Dr. Toggart.

[2] Mr. Bell posits that Medical Protective's policy is more likely to provide coverage in his case, but he does not abandon his claim against St. Paul.

[3] Medical Protective originally raised a defense based upon an exclusion in its policy for liabilities covered under a workmen's compensation policy, since Mr. Bell's medical expenses were paid through workmen's compensation since he was injured on the job. Medical Protective has apparently abandoned that claim, given that it did not raise it in its own motion for summary judgment, or respond to the arguments on that issue raised by Mr. Bell and St. Paul in their respective motions for summary judgment.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party." *Id.* The existence of some factual disputes among the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Id.* (emphasis in original). Thus, a dispute as to irrelevant facts will not preclude summary judgment. *Id.* The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether the moving party has satisfied the burden, the Court will consider all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and must resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court may not weigh conflicting evidence or weigh the credibility of the parties. *Id.* If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then the Court must not grant summary judgment. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993).

## II.   FACTUAL BACKGROUND

In this case, the pertinent facts are undisputed.[4] Defendant Thomas E. Bell is the plaintiff in the Underlying Suit, styled *Thomas E. Bell v. Edward J. Toggart, M.D. and Southwest Florida Heart Group, P.A.*, currently pending in the Twentieth Judicial District in Lee County, Florida. According to the allegations in Mr. Bell's complaint, Mr. Bell sustained injuries while assisting Dr. Toggart, at Dr. Toggart's direction, in moving a patient during a cardiac catheterization procedure. (*See* Doc. No. 1, Ex. C.) More specifically, as set forth in Mr. Bell's complaint, on or about January 7, 1999, Dr. Toggart was performing two procedures on a patient in catheterization laboratory # 3 at the Naples Community Hospital. The first involved the placement of femoral stints in a patient; the second was a cardiac catheterization on the same patient's heart. (*Id.* ¶¶ 5, 6.)

---

[4]Medical Protective, in support of its own motion and in opposition to Mr. Bell's and St. Paul's motions, has submitted evidence in the form of depositions taken in discovery in the Underlying Suit. As discussed below, the pleadings in Bell's complaint in the Underlying Suit determine coverage. Thus, to the extent the deposition testimony creates any factual disputes regarding *liability* (i.e., the insurers' ultimate duty to indemnify), the potential disputes are not material to the issue of the insurers' duty to defend, which is the only issue before this Court. *See Fed. Ins. Co. v. Applestein*, 377 So. 2d 229, 232–33 (Fla. 3d DCA 1979) (holding that when the actual facts are inconsistent with the allegations in the complaint, the allegations in the complaint alone determine the insurer's duty to defend, and the "actual facts" of the situation are not relevant).

While Dr. Toggart was transitioning from the first procedure to the second, the patient fell off the operating table.[5] (*Id.* ¶ 6.) Dr. Toggart called for assistance in getting the patient back on the table. Thomas Bell, a Cardiovascular Technologist acting at Dr. Toggart's direction, assisted in lifting the patient back on to a stretcher.[6] In the process, Mr. Bell injured his back. (*Id.*) Mr. Bell then sued Dr. Toggart in the Underlying Suit for negligence in causing his injury; he named the Heart Group as a defendant on *respondeat superior* grounds. There is no dispute that Dr. Toggart was acting in the course and scope of his employment by the Heart Group at the time the incident occurred.

After Mr. Bell filed the Underlying Suit, Dr. Toggart and the Heart Group placed both of their liability carriers, plaintiff St. Paul and defendant Medical Protective, on notice of Bell's claim. As indicated above, Medical Protective, which insured Dr. Toggart and the Heart Group for professional negligence, denied coverage. St. Paul, on the other hand, elected to defend against the claim under a reservation of rights, asserting that its commercial general liability policy did not apply to injuries that occurred as a result of the rendering of professional services. St. Paul then filed this declaratory judgment action, seeking a court decision that Medical Protective's policy, and not St. Paul's, was implicated by the claims alleged in the Underlying Suit.

St. Paul's policy includes an exclusion that states, in pertinent part:

**Health care professional services.** We won't cover injury or damage or medical expenses that result from the performance of or failure to perform health care professional services.

*Health care professional services* include:

- Dental, medical, mental, nursing, surgical, x-ray and other health care professional services, including food or beverages provided with those services[.]

(Doc. No. 1, Ex. A, at 11.)

Medical Protective's policy, on the other hand, states that it has the duty to defend and pay "***ANY CLAIM FOR DAMAGES . . . BASED ON PROFESSIONAL SERVICES RENDERED OR WHICH SHOULD HAVE BEEN RENDERED . . . BY THE INSURED . . . IN THE PRACTICE OF THE INSURED'S PROFESSION.***" (Doc. No. 1, Ex. B, at 1.) Medical Protective's denial of coverage is based on its assertion

---

[5]The patient was unharmed and is not a party to this or the underlying action.

[6]That Mr. Bell was a Cardiovascular Technician employed by the hospital were not facts enumerated in the Complaint but came to light during discovery. These facts are not disputed.

that the injury in question was not based on the rendering of professional services.

### III.      DISCUSSION

St. Paul's general liability insurance policy and Medical Protective's professional liability policy were issued in Florida and the incident giving rise to the claims by Mr. Bell occurred in Florida. The controversy will, therefore, be decided under Florida law. *See West Am. Ins. Co. v. Band & Desenberg*, 925 F. Supp. 758, 760 (M.D. Fla. 1996), *aff'd*, 138 F.3d 1428 (11th Cir. 1998). In a nutshell, given the undisputed facts, the Court must consider whether, under Florida law, Mr. Bell's claims are "based on" or "result from" the performance of medical professional services.

#### A.      The Applicable Florida Law

Under Florida law, the question of whether a particular risk is covered by an insurance policy and the extent of coverage are questions of law for the court when the facts are undisputed. *Auto-Owners Ins. Co. v. Marvin Dev. Corp.*, 805 So. 2d 888, 891 (Fla. 2d DCA 2001); *West Am. Ins. Co.*, 925 F. Supp. at 760. Terms utilized in an insurance policy should be given their plain and unambiguous meaning as understood by the "man-on-the-street." *State Farm Fire & Cas. Co. v. Castillo*, 829 So. 2d 242, 244 (Fla. 3d DCA 2002) (citing *State Farm & Cas. Co. v. Metro. Dade County,* 639 So. 2d 63, 66 (Fla. 3d DCA 1994); *Sanz v. Reserve Ins. Co. of Chicago, Ill.*, 172 So. 2d 912, 913 (Fla. 3d DCA 1965)). Further:

> A court may resort to construction of a contract of insurance only when the language of the policy in its ordinary meaning is indefinite, ambiguous or equivocal. If the language employed in the policy is clear and unambiguous, there is no occasion for construction or the exercise of a choice of interpretations. In the absence of ambiguity . . . it is the function of the court to give effect to and enforce the contract as it is written.

*Castillo*, 829 So. 2d at 244 (quoting *U.S. Fire Ins. Co. v. Morejon,* 338 So. 2d 223, 225 (Fla. 3d DCA 1976)). Ambiguous provisions are construed in favor of coverage, but to allow for such a construction, the provision must actually be ambiguous. *Taurus Holdings, Inc. v. U.S. Fidelity and Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005). The parties here do not argue that the policy terms are ambiguous; they simply dispute their application under the facts presented in this case.

Generally speaking, an insurer's duty to defend is determined *solely* by the allegations in the complaint in the underlying action, "even if they may be factually incorrect or without merit." *SM Brickell Ltd. P'ship v. St. Paul Fire & Marine Ins. Co.*, 786 So. 2d 1204, 1206 (Fla. 3d DCA 2001). Thus, unless the underlying complaint states a claim covered by the policy, an insurer has no duty to defend. *Transcon. Ins.*

*Co. v. Ice Sys. of Am., Inc.*, 847 F. Supp. 947, 949–50 (M.D. Fla. 1994); *Baron Oil Co. v. Nationwide Mutual Fire Ins. Co.*, 470 So. 2d 810, 814–15 (Fla. 1st DCA 1985). When the actual facts are inconsistent with the allegations in the complaint, the allegations in the complaint still determine the insurer's duty to defend. *Fed. Ins. Co. v. Applestein*, 377 So. 2d 229, 232–33 (Fla. 3d DCA 1979). Consequently, the "actual facts" of the situation are not pertinent to the issues involved in the case before us." *Id.* at 233.

The duty to defend is separate and apart from—and broader than—the duty to indemnify, and the insurer is required to defend the suit even if the true facts later show there is no coverage. *Klaesen Bros., Inc. v. Harbor Ins. Co.*, 410 So. 2d 611, 612–13 (Fla. 4th DCA 1982). All doubts as to whether a duty to defend exists in a particular case must be resolved against the insurer and in favor of the insured. *Baron Oil Co.*, 470 So. 2d at 814. As long as the complaint alleges facts that create potential coverage under the policy, the insurer must defend the suit. *Grissom v. Commercial Union Ins. Co.*, 610 So. 2d 1299, 1307 (Fla. 1st DCA 1992).

> B.   Application of the Policy Language to the Allegations in the Underlying Complaint: Whether the Complaint Alleges Liability "Based On" or "Resulting From" the Provision of health care professional services.

Again, the sole issue before the Court is whether the injury alleged in the complaint is "based on professional services rendered . . . by the insured" or "result[ed] from the performance of or failure to perform health care professional services." (Doc. No. 1, Exs. A and B.) As a sister division of this Court has previously observed, "[t]he fact that the act [allegedly giving rise to liability] was committed by a professional or even that it occurred in a medical setting does not necessarily mean that it involves a professional service." *Sarasota Anesthesiologists, P.A. v. St. Paul Fire & Marine Ins. Co.*, No. 03-1293, Order Granting Final Summary Judgment at 5 (M.D. Fla. March 31, 2004) (citing *Lakeshore Hosp., Inc. v. Clarke*, 768 So. 2d 1251 (Fla. 1st DCA 2000)) (patient who brought negligence action against hospital for injuries suffered when she fell walking from her hospital bed to the bathroom did not bring a claim for "medical negligence"). Both of those factors are relevant, however.

*Not* relevant is the fact that Mr. Bell was not a patient of Dr. Toggart's at the time of his injury, since neither Medical Protective's coverage language nor St. Paul's exclusion is limited to claims brought by patients alleging negligence in the provision of professional services. *Cf. Sarasota Anesthesiologists*, No. 03-1293, Order at 2–3 (noting that the insured's professional liability policy did not provide coverage for the injury in

question because, *by its terms*, it only protected the insured from claims for injuries to *patients*, not claims by third parties, and St. Paul's exclusion, identical to the one at issue here, also applied to bar coverage because it did not contain any language limiting its application to claims brought by patients ); *Vogelsang v. Allstate Ins. Co.*, 46 F. Supp. 2d 1319, 1321 (S.D. Fla. 1999) (holding that a professional services exclusion in an insured attorney's business insurance policy, applicable to injuries "arising out of" professional services, applied even though the claimant was not the insured's client, because "nothing in the language of the professional services exclusion limits the exclusion to claims brought by clients of the professional").

Thus, instead of the identity of the claimant (where there is no policy limitation relating to the identity of the claimant), courts focus on the type of causal connection between the alleged act and the alleged injury to determine coverage. For instance, in *Sarasota Anesthesiologists*, the injured party was a nurse working with an insured anesthesiologist who, in the course of working on a patient, over-inflated an IV-fluid bag, causing it to explode near the nurse's ear, thereby causing her injury. In other words, the physician's purported negligence in providing treatment to his patient, while it did not injure the patient, allegedly injured a third party who was also assisting in the patient's treatment. The court found that the allegations in the complaint "assert[ed] liability for acts committed during the course of performing a medical service which were an integral part of that service," and, therefore, that the liability fell within the professional services exclusion in St. Paul's general liability policy.

The exclusion at issue in that case was identical to St. Paul's exclusion in the case at bar, and the facts are sufficiently similar that they compel the same conclusion: Dr. Toggart's alleged negligence in the treatment of his own patient allegedly resulted in Mr. Bell's injury, and, as pertains to Medical Protective's policy, Mr. Bell's claims are "based on" the rendering of professional services to a patient by the insured, Dr. Toggart. The fact that Mr. Bell also alleges that Dr. Toggart's negligence extended to his conduct toward Mr. Bell—that is, by requiring Mr. Bell to cooperate in an allegedly ill-conceived method of moving the patient from the floor back to the table when Dr. Toggart knew or should have known that Mr. Bell had a prior back injury which could be exacerbated—does not change the analysis. The bottom line is that Mr. Bell alleges that if Dr. Toggart had "followed well established and safe procedures in turning his patient," the patient would not have fallen on the floor, thereby creating a crisis that required Mr. Bell's assistance and led to his injury. (*See* Doc. No. 1, Ex. C ¶ 7.)

The Court also finds persuasive a case applying New Jersey law, *Records v. Aetna Life & Casualty Insurance*, in which the pertinent policy provided coverage for "injury *arising out of* the rendering of or failure to render . . . professional services" and defined "professional services" to mean "services requiring specialized knowledge and mental skill in the practice of the profession." 683 A.2d 834, 836 (N.J. Super. Ct. App. Div. 1996) (emphasis added). The plaintiff in the underlying action was a nurse who alleged that the insured physician assaulted her by grabbing her and screaming at her after becoming angry because she transferred his patient from a nursing home to a hospital. *Id.* at 835. The New Jersey Appellate Division held that the nurse's claim was covered by the doctor's malpractice policy. In reaching that conclusion, the court focused on the term "arising out of," rather than on the definition of "professional services":

> [T]he MIIX policy provides coverage not only for claims of malpractice in the direct "rendering of professional services" but also for any other claim "arising out of" the rendering of professional services. The phrase "arising out of" has been defined broadly in other insurance coverage decisions to mean conduct "originating from," "growing out of" or having a "substantial nexus" with the activity for which coverage is provided. Consequently, if [the insured] had consulted with [the nurse] in deciding whether to transfer a patient to the hospital and negligently stepped on her toe during the course of that consultation, any resulting injury could reasonably be said to "originate from," "grow out of" or have a "substantial nexus" with plaintiff's rendering of professional services and thus fall within the coverage of the MIIX policy.
>
> Although [the insured's] discussion with [the nurse] may have had a less direct relationship to his professional services than this hypothetical, we are nevertheless satisfied that it "arose out of" the rendering of those services. When [the insured] accosted [the nurse], the patient was still in the nursing home waiting for the arrival of the ambulance. Consequently, [the insured's] actions could be viewed as an effort to prevent the patient's transfer to the hospital until after [the insured] had had an opportunity to determine his condition and to speak with members of his family. In addition, since [the insured] had a substantial number of other patients in the Crest Haven Nursing Home, he had a direct interest in the nursing home's general practices and procedures relating to the transfer of patients. Therefore, [the insured's] discussion with the nurse regarding the nursing staff decision to transfer his patient to a hospital "originated from," "grew out of" and had a "substantial nexus" with his rendering of professional services to patients residing in the nursing home."

*Id.* at 837 (internal citations and footnote reference omitted); *cf. Taurus Holdings*, 913 So. 2d at 532 (noting, in the context of actions against a gun manufacturer, that the term "arising out of" is broader in meaning than the term "caused by" and means " 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to' or 'having a connection with' " (quoting *Hagen v. Aetna Cas. & Sur. Co.*, 675 So. 2d 963, 965 (Fla. 5th DCA 1996)).

Here, Medical Protective's policy provides coverage for claims "based on" the rendering of professional services; the term "based on" is effectively as broad as the term "arising out of." The injury at

issue occurred during the course of Dr. Toggart's treatment of his patient. If Dr. Toggart's *patient* had sued for injuries arising from his fall or from being moved back onto the table after the fall, it is obvious that his claim would have been covered by Medical Protective's policy. *Cf. Executive Health Servs., Inc. v. State Farm Fire & Cas. Co.*, 498 So. 2d 1268, 1269 (Fla. 2d DCA 1986) (holding that a policy exclusion for injury due to "any service or treatment conducive to health or of a professional nature" applied where the patient, while being treated, was asked to lie back on examination table; the table tilted up at one end and the patient fell off, was injured, and sued). The fact that Mr. Bell, rather than the patient, is bringing a claim for injuries incurred while moving the patient should not alter the outcome, as Mr. Bell's alleged injuries arise from, and are based on, the exact same act. The Court therefore concludes that Mr. Bell's allegations are sufficient to trigger Medical Protective's policy provision, which covers "any claim for damages . . . based on professional services rendered or which should have been rendered . . . by the insured." Consequently, the claim also implicates St. Paul's exclusion for injuries resulting from the performance or failure to perform health care professional services.

The cases cited by Medical Protective in support of its argument that its policy language is not applicable are distinguishable or inapplicable. In *Lindheimer v. St. Paul Fire & Marine Ins. Co.*, the court held that a dentist's intentional sexual assault of a patient was not covered under the policy at issue because the assault was not "causally connected to provision of 'professional services.' " 643 So. 2d 636, 638–39 (Fla. 3d DCA 1994) (*en banc.*) That holding is inapplicable here, principally because the wrongful act alleged in this case was not an intentional tort. Moreover, although the act of moving the patient from the floor to the cardiac table itself was not necessarily an act or service that required "professional skill," *see id.* at 638, it was nonetheless a "medical act," performed at the direction of Dr. Toggart while the patient was under his care and in furtherance of the patient's care. Dr. Toggart's decision to move the patient was therefore causally connected to the doctor-patient relationship and (allegedly) gave rise to Mr. Bell's injuries.

*Employers Reinsurance Corp. v. Newcap Ins. Co.*, 209 F. Supp. 2d 1184 (D. Kan. 2002), also cited by Medical Protective, is likewise distinguishable. In that case, the plaintiff in the underlying suit had been to the hospital emergency room for chest pain and rapid heart beat and was discharged after his symptoms abated. He left the emergency room and then collapsed while walking to his car in the hospital parking lot. His wife called for assistance. The hospital security guards who came to their assistance, rather than sending

for a stretcher, called 911 for an ambulance, in compliance with hospital policy. The plaintiff alleged that the resulting delay in treatment caused him permanent brain damage. The court held that the acts in question were not covered by the professional liability provision in the insurance policy, in large part because no doctor or other medical professional was involved. Instead, the security guards made a decision based upon hospital administrative regulations establishing the protocol for responding to emergency situations. Medical Protective cites the case for the proposition that "transporting an injured person by stretcher" cannot qualify as "the furnishing of professional health care service[s]." (Doc. No. 79, at 9.) In *Employers Reinsurance*, however, one of the determinative factors was that no medical professional was involved in the decision giving rise to liability. Hypothetically speaking, if a *doctor* had made the judgment call at issue in *Employers Reinsurance* (to call an ambulance rather than, say, performing CPR and sending for a stretcher), the decision likely would have given rise to a malpractice claim that would have been covered by the policy at issue. The holding in *Employers Reinsurance* is inapplicable to the case at bar precisely because the acts that allegedly gave rise to liability in the case before this Court were done at the direction of a physician directly engaged in patient care.

Finally, Medical Protective also cites *Marx v. Hartford Accident & Indemnity Co.*, 157 N.W.2d 870 (Neb. 1968), as the setting forth "the definition of 'professional services' most frequently employed by courts to address the issue of whether professional services coverage has been triggered." (Doc. No. 79, at 7.) The Court observes that this broad assertion is not supported by any case citations in Medical Protective's brief. Regardless, the issue in *Marx* was whether the plaintiffs' malpractice insurer was liable for fire damage to the plaintiffs' offices resulting from the negligence of an employee technician, who, while refilling a hot water sterilizer, mistakenly poured benzine instead of water into the sterilization container. Fumes exploded causing a fire and extensive damage to the building. However, no patient was present or being treated. *Marx*, 157 N.W.2d at 871. The insurer's liability was limited by the terms of its policy to damages "arising out of . . . malpractice, error or mistake . . . [i]n rendering or failing to render professional services." *Id.* The court concluded that boiling water in a sterilizer was not a professional service, particularly given that "[t]he act was not a part of any patient's treatment per se." *Id.* at 872.

Medical Protective cites *Marx* in support of its contention that the act of moving a patient who has fallen on the floor back onto the table, like boiling water in a sterilizer, is an inherently manual act that required

no special skill, professional knowledge, or training, and therefore that its policy is not implicated. To the contrary, the act in the case at bar, regardless of whether it may be characterized as manual or physical in nature, inherently involved (was "based on") patient care and a professional decision regarding the most effective and appropriate care to be given the patient under the circumstances. *Marx*, which is not controlling here anyway, does not require such a different result, since the act that caused damage in *Marx* was not done in the course of or in the furtherance of patient care.[7]

## IV.  CONCLUSION

In sum, the Court finds that the injury alleged in Bell's complaint in the Underlying Suit "resulted from" and is "based on professional services rendered . . . by the insured," Dr. Toggart. St. Paul is therefore entitled to summary judgment in its favor and a declaration that it has no duty to defend Dr. Toggart or the Heart Group in the Underlying Suit. Medical Protective, on the other hand, does have an obligation to defend its insureds in the Underlying Suit and to reimburse St. Paul for the costs incurred to date in providing the defense that Medical Protective should have provided.

An appropriate Order will enter.

_____
Thomas A. Wiseman, Jr.
Senior U.S. District Judge

---

[7] In another case cited by Medical Protective, the court granted the insurer's motion for judgment on the pleadings based on policy language similar to that in this case. *Hartford Cas. Ins. Co. v. Shehata*, 427 F. Supp. 336 (N.D. Ill. 1977), *rev'd and remanded*, 577 F.2d 746 (7th Cir. 1978) (*TABLE*). Medical Protective failed to note, however, that the *Shehata* decision it cites had been reversed and remanded without opinion by the Seventh Circuit.